**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Hector Luis P. M.,

Petitioner,

v.

Todd Blanche, *Attorney General*; Markwayne Mullin, *Secretary, U.S. Department of Homeland Security*; David J. Venturella, *Acting Director of Immigration and Customs Enforcement*; David Easterwood, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*;

Respondents.

No. 0:26-cv-04211-KMM-ECW

**ORDER**

---

Petitioner Hector Luis P. M. ("Petitioner" or "Hector") has been in the custody of federal immigration authorities since September 21, 2026. On September 30, 2026, he filed a Verified Petition for a Writ of Habeas Corpus challenging the legality of his ongoing detention. Pet., Dkt. 1. Hector claims that Respondents are detaining him in violation of his rights under the Due Process Clause of the Fifth Amendment and that he was arrested unlawfully. *Id.* ¶¶ 42–55. He asks the Court to order Respondents to immediately release him from custody or, in the alternative, to afford him an individualized bond hearing to assess whether he is a flight risk or a danger to the community. *Id.* at 27. Respondents oppose Hector's petition, arguing that: (1) Hector cannot challenge the legality of his arrest in a habeas case like this; (2) even if he could, his arrest was legal; and (3) under 8 U.S.C. § 1225(b)(2)(A), Hector's detention is mandatory pending the completion of removal

proceedings, and his due process challenge to that detention is foreclosed by Supreme Court and Eighth Circuit precedent. Resp. to Pet., Dkt. 5. For the reasons that follow, the Petition is granted in part and denied in part, and Respondents are ordered to provide Hector with a prompt bond hearing.

## BACKGROUND

Hector is a native and citizen of Venezuela. He entered the United States without inspection in May 2023 at a place and time that is not explained in the record. Eventually, Hector settled in Richfield, Minnesota, where he has lived since May 2023 with his mother, his stepfather, and his younger brother. Hector cares for and supports his brother and his mother, who has a disability that impacts her mobility.

On September 19, 2026, Respondents issued a Notice to Appear ("NTA") for Hector charging him as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i). Olson Decl. ¶ 5, Dkt. 6; NTA, Dkt. 6-1. On September 21, 2026, Hector was arrested by local police on allegations of driving under the influence. Later that day, officers from Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") encountered Petitioner at the Dakota County Jail. Olson Decl. ¶ 6. ICE/ERO conducted background checks that revealed Hector was not legally present in the United States and lodged an Immigration Detainer with the Jail. *Id.* ¶¶ 7–8; Detainer, Dkt. 6-4. On September 23, 2026, a state court judge ordered Hector's release on his pending driving-under-the-influence charge. ICE/ERO issued an administrative Form I-200 warrant for Hector's arrest. *Id.* ¶ 9; Form I-200, Dkt. 6-3. However, when he was set to leave the Jail, an ICE/ERO agent served Hector with the warrant and placed him under arrest. Olson Decl. ¶ 10. At that point,

ICE/ERO agents transported Hector to the agency's office in St. Paul for processing and later transferred him to Sherburne County Jail. *Id.* ¶ 11.

## DISCUSSION

District courts may grant a petition for a writ of habeas corpus when the petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The petitioner has the burden of proving his detention is illegal by a preponderance of the evidence. *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 965 (D. Minn. 2025).

### I. Unlawful Arrest Claim

Petitioner claims that he is entitled to an order requiring Respondents to immediately release him from custody because he was arrested unlawfully. There are "two mechanisms by which 'it is appropriate to arrest an alien during the removal process.'" *Cesar F.F. v. Blanche*, No. 26-cv-2540 (PJS/DTS), Dkt. 8 at 3 (D. Minn. June 2, 2026) [hereinafter *Cesar F.F.* Order] (quoting *Arizona v. United States*, 567 U.S. 387, 407 (2012)). First, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Second, the law allows for a warrantless arrest in limited circumstances. *See* 8 U.S.C. § 1357(a)(2).

Under the first mechanism, immigration authorities may arrest a noncitizen for the purposes of removal proceedings pursuant to an administrative warrant known as a Form I-200, Warrant of Arrest. 8 C.F.R. § 236.1(b)(1). Such a warrant is valid when it is issued at the same time as ICE issues a notice to appear, or any time after the NTA has been issued. *Id.*; *Martha C.G.P. v. Blanche*, No. 26-cv-2308 (DWF/JFD), 2026 WL 1329577, at *3 (D.

Minn. May 13, 2026) ("Respondents may arrest a noncitizen using a Form I-200 only if the Form I-200 issues a the same time or after the Department of Homeland Security issues an NTA."). Courts have held that an arrest is made "pursuant to" an I-200 warrant when the warrant is issued prior to that arrest. *Makitio G. A., v. Blanche*, No. 26-cv-2200 (ECT/DLM), 2026 WL 1584457, at *4 (D. Minn. May 22, 2026) ("[I]f a removal warrant for [the noncitizen] was not procured until ... after his ... arrest, that means he was arrested without a warrant."), *R&R adopted*, 2026 WL 1591270 (D. Minn. June 3, 2026); *cf. Pina C.D.B. v. Bondi*, No. 26-cv-1929 (KMM/DJF), 2026 WL 810676, at *2 (D. Minn. Mar. 24, 2026) (collecting cases holding 8 U.S.C. § 1226(a)'s "[o]n a warrant" language to require the issuance of a warrant prior to arrest).

The second means of arresting a noncitizen is under the warrantless-arrest authority provided in 8 U.S.C. § 1357. In the provision relevant here, such an arrest is permissible only if there is "reason to believe that the alien so arrested is in the United States in violation of any [immigration] law or regulation and is likely to escape before a warrant can be obtained for his arrest[.]" 8 U.S.C. § 1357(a)(2). By its plain language, § 1357(a)(2) contains two separate requirements: (1) that the individual is in the United States in violation of immigration laws; and (2) that he is likely to escape before a warrant can be obtained for his arrest. And in this context, "the term 'reason to believe' . . . means constitutionally required probable cause." *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010).

Hector argues that his arrest was unlawful because he was not served with the Form I-200 when he was taken into custody, even though it had been issued prior to that

time. Pet'r Reply at 2–4. He argues that a warrant-service requirement is consistent with statues, regulations, and caselaw. *Id.* at 4–8 Further, he contends that requiring an ICE officer to present an I-200 prior to or at the time of an arrest would "mitigate ICE's widespread unconstitutional patterns of refusing to identify themselves or impersonating local law enforcement." *Id.* at 9–10. And Hector claims that Respondents cannot constitutionally use an I-200 warrant that references the authority to make an arrest under 8 U.S.C. § 1226(a) to justify a detention that they now claim is required under 8 U.S.C. § 1225. *See id.* at 13–15.

The Court finds that Petitioner's unlawful arrest claim does not support habeas relief. Critically, the record indicates that the NTA and the administrative warrant were issued prior to September 23, 2026, when Hector was taken into custody by ICE/ERO. Olson Decl. ¶¶ 5–9. But contrary to Petitioner's claim, ICE's failure to *serve* an I-200 warrant prior to or at the time of an arrest does not render that arrest unlawful. *See Tanneh W.S. v. Blanche*, No. 26-cv-2775 (LMP/EMB), 2026 WL 1801140, at *3 (D. Minn. June 23, 2026) ("[A]n administrative arrest warrant need not be served to be valid; rather it need only be 'issued.'" (quoting *Sinan O. v. Noem*, No. 26-cv-386 (LMP/JFD), Doc. 14 at 4–6 (D. Minn. Feb. 3, 2026))); *Ronaikel R.C.G. v. Blanche*, No. CV 26-4045 (JRT/DTS), 2026 WL 2970716, at *2 (D. Minn. Oct. 2, 2026) ("ICE regulations do not obligate the immigration officer to give a copy of the arrest warrant to the person at the time of the arrest."). And Petitioner's policy-based arguments in favor of requiring service of administrative warrants at the time of arrest—i.e., to deter immigration agents from

engaging in constitutionally questionable practices—cannot create legal requirements where neither statutes nor regulations impose them.

Finally, this is not a case where the Respondents' use of a Form I-200 warrant that refers to arrest authority under Section 236 of the INA (8 U.S.C. § 1226) necessarily renders the mandatory detention provision in 8 U.S.C. § 1225(b)(2) inapplicable. Petitioner relies on the decision in *Souleimane C. v. Blanche*, No. 26-cv2215 (LMP/JFD), 2026 WL 1180075, at *3 (D. Minn. Apr. 30, 2026) to support this contention, but there, the petitioner had been encountered at the border and released on his own recognizance, which the court treated as a form of conditional parole that is only available under § 1226(a), and that was the basis consistently articulated by the agency for its actions until ICE chose to change course. *Id.* at *3–4. The mere fact that the I-200 warrant in this case refers to Section 236 of the INA does not establish that § 1226 is the only basis for detention, if any, Respondents can invoke here. *See Eliseo C. v. Blanche*, No. 26-cv-2282 (ECT/SGE), Doc. 12 at 15 n.8 (D. Minn. June 29, 2026) ("That language explains which officers are authorized to conduct the arrest. The language does not indicate that the arrest occurred pursuant to § 1226."); *Venancio P. J. v. Blanche*, No. 26-cv-2740 (ECT/JFD), Doc. 12 at 3 (D. Minn. June 29, 2026) ("I am persuaded by Respondents' argument that the reference to § 1226 on Venancio's Form I-200 did not commit Respondents to detaining Venancio under § 1226.").

For these reasons, Hector's unlawful arrest claim is denied.[1]

## II. Due Process Claim

Hector next claims that detaining him without a bond hearing or other proceeding to facilitate an individualized assessment of whether his detention is necessary to protect the public and ensure his presence for immigration proceedings violates his rights to due process of law under the Fifth Amendment. Respondents argue that he is not entitled to such a bond hearing because he is an "applicant for admission" who is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), as interpreted by the Eight Circuit in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026).[2] According to Respondents, Petitioner's due process claim is foreclosed by several decisions of the U.S. Supreme Court and the Eighth Circuit, among them: *Demore v. Kim*, 538 U.S. 510 (2003); *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020); and *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024). As this Court and others in this District have previously held, however, the Court concludes that Hector has rights under the Due Process Clause notwithstanding his illegal entry into the United States, and the failure to provide him with an individualized determination of the necessity of his detention because an act of Congress makes him subject to mandatory detention violates those rights.

---

[1] Given the Court's conclusion that Hector's unlawful arrest claim fails on this record, the Court finds it unnecessary to address the parties' arguments about whether a claim of illegal arrest can form the basis for habeas relief pursuant to *Arias v. Rogers*, 676 F.2d 1139 (7th Cir. 1982).

[2] *Avila* does not address any constitutional limitations upon the authority Congress provided in § 1225(b)(2)(A) to detain an "applicant for admission" pending completion of removal proceedings. 170 F.4th at 1140 n.8 (Erickson, J., dissenting).

### A. The Due Process Clause Applies to Petitioner

Under the Fifth Amendment's Due Process Clause, "[n]o person shall … be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. That protection from deprivation extends to all persons, including noncitizens who entered the United States unlawfully. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (explaining that the due process clause applies to every person in the United States "whether their presence here is lawful, unlawful, temporary, or permanent"); *Osman J.M.A. v. Blanche*, No. 26-cv-2123 (DWF/DJF), 2026 WL 1005056, at *2 (D. Minn. Apr. 14, 2026). The fact that Hector entered the United States without inspection and lacks legal status does not mean that the protections of the Due Process clause do not apply to him. And because he has lived in the United States for multiple years, if the government seeks to deprive Hector of his liberty, the Due Process Clause entitles him to some process.

That is so because "[f]reedom from physical restraint 'lies at the heart of the liberty' that the Due Process Clause protects." *Felipe S.P.*, 2026 WL 1911656, at *2 (quoting *Zadvydas*, 533 U.S. at 690). Indeed, freedom "from physical detention is the most elemental of liberty interests." *Id.* (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (plurality opinion)). And while it is true that "Congress has plenary power over immigration, and the Executive Branch has broad discretion in enforcing immigration laws[,] . . . the exercise of that power must comply with the Constitution." *Felipe S.P.*, 2026 WL 1911656, at *2 (citations and quotations omitted). "Detention is a constitutionally permissible part of removal proceedings. . . . But in this context, it implicates an important

liberty interest protected by the Due Process Clause, so it must serve a constitutionally acceptable purpose." *Id.* (cleaned up).

The Supreme Court has made clear that outside of detention in connection with criminal proceedings, when the government seeks to deprive a person of liberty in a civil matter,[3] the Due Process Clause allows it to do so only "in certain special and narrow nonpunitive circumstances . . . where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (cleaned up). And so, the question becomes what constitutionally acceptable purpose is served by the detention of an alien under 8 U.S.C. § 1225(b)(2)—the authority the government invokes here. In the immigration context, the Supreme Court has recognized that the government's interests in preventing flight and protecting the community may support detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018) ("Detention during [immigration] proceedings gives immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity before a final decision can be made."). Like other courts, this Court finds the government's interests in "[e]nsuring appearance at future proceedings and limiting threats to public safety are interests that can justify detaining noncitizens like [Hector]" *Felipe S.P.*, 2026 WL 1911656, at *4; *Anthony Javier R.M.*, 2026 WL 1506306, at *9. And in this case, Hector's claim is that "by denying him *any* procedure for assessing his danger or flight

---

[3] Removal proceedings are "a civil, not criminal, matter," *Arizona v. United States*, 567 U.S. 387, 396 (2012), and "[u]nlawful presence within the United States, by itself, is not a criminal offense," *Anthony Javier R.M. v. Blanche*, No. 26-cv-2283 (LMP/DLM), 2026 WL 1506306, at *5 (D. Minn. May 29, 2026).

risk, the government has taken his liberty in violation of the Due Process Clause." *Felipe S.P.*, 2026 WL 1911656, at *4.

**B. *Demore*, *Banyee*, and *Thuraissigiam***

The Court finds that the Supreme Court and Eighth Circuit decisions relied upon by Respondents—*Demore*, *Banyee*, and *Thuraissigiam*—do not preclude a ruling in Petitioner's favor on his due process claim for largely the same reasons articulated by United States District Judges Laura M. Provinzino in *Anthony Javier R.M. v. Blanche*, No. 26-cv-2283 (LMP/DLM), 2026 WL 1506306 (D. Minn. May 29, 2026), and Nancy E. Brasel in *Felipe S.P. v. Blanche*, No. 26-cv-2212 (NEB/DJF), 2026 WL 1911656 (D. Minn. July 2, 2026).

***Demore* and *Banyee***

Turning first to *Demore* and *Banyee*, the Court concludes that neither decision forecloses Petitioner's due process claim for two reasons. First, those cases both considered a different provision of the Immigration and Nationality Act, and that difference matters. Both *Demore* and *Banyee* addressed due process challenges to the mandatory detention scheme established by 8 U.S.C. § 1226(c). Unlike the detention authorized by § 1225(b)(2), under section 1226(c) detention is required pending the completion of removal proceedings for certain "criminal aliens." *See Demore*, 538 U.S. at 513. In relevant part, § 1226(c) provides that the Secretary of Homeland Security "shall take into custody" noncitizens with specific criminal histories, including those who have "committed" crimes

of moral turpitude or aggravated felonies. 8 U.S.C. § 1226(c)(1)(B)–(C) (cross-referencing, *inter alia*, 8 U.S.C. § 1227(a)(2)(A)(i)–(ii)).[4]

Both petitioners in *Demore* and *Banyee* had been convicted of at least one aggravated felony. *Demore*, 538 U.S. at 513; *Banyee*, 115 F.4th at 930. The discussion in *Anthony Javier R.M.* aptly describes the context of *Demore* and *Banyee*:

> In *Banyee*, the petitioner, a lawful permanent resident, was convicted of armed robbery. *See* 115 F.4th at 930. He was placed in removal proceedings and detained under Section 1226(c). *Id.* Although he was initially granted cancellation of removal by an immigration judge, the BIA reversed and remanded. *Id.* On remand, the petitioner was ordered removed by the immigration judge, and he appealed the order of removal to the BIA. *See id.* The petitioner, who by this point had been detained in a county jail for one year, sought habeas relief while that appeal was pending, challenging his "lengthy detention" during the removal proceedings on due process grounds but not "directly contesting the grounds for his mandatory detention." *Id.* at 930–31. The Eighth Circuit rejected the petitioner's argument, concluding that "the [g]overnment may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 931 (alteration in original) (quoting *Demore*, 538 U.S. at 526).
>
> Similarly, in *Demore*, the petitioner had been convicted of at least one aggravated felony offense. 538 U.S. at 513. He did not "dispute the validity of his prior convictions" or the government's "conclusion that he [was] subject to mandatory detention under § 1226(c)," and he "conced[ed] that he was

[4] Section 1226(c) now also requires DHS to detain noncitizens who have been charged with, arrested for, or convicted of "burglary, theft, larceny, shoplifting, or assault of a law enforcement officer, or any crime that results in death or serious bodily injury to another person" 8 U.S.C. § 1226(c)(1)(E)(ii). These provisions were added to § 1226(c) in January 2025 as part of the Laken Riley Act, Pub. L. No. 119-1, 130 Stat. 3 (2025). Both *Banyee* and *Demore* addressed older versions of the statute. In any event, there is no evidence that Hector has been arrested or convicted of any offense that would render any portion of § 1226(c) applicable to him, and Respondents do not suggest otherwise.

> deportable." *Id.* at 513–14. Instead, the petitioner argued that his detention under Section 1226(c) violated the Due Process Clause because the government "had made no determination that he posed either a danger to society or a flight risk." *Id.* at 514. The Supreme Court rejected the petitioner's argument and affirmed that his detention without a bond hearing was constitutionally permissible. *See id.* at 530. Critical to *Demore*'s holding—and *Banyee* to the extent it relies on *Demore*—was Congress's reliance, in enacting Section 1226(c), on findings supporting its "justifiabl[e] concern[ ] that deportable criminal aliens who are not detained [would] continue to engage in crime and fail to appear for their removal hearings." *Id.* at 513. The Supreme Court therefore reasoned that the "narrow detention policy reflected in 8 U.S.C. § 1226(c)," as applied to the class of criminal noncitizens in removal proceedings, was constitutionally permissible because "[s]uch detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Id.* at 526, 528. In effect, the consideration of dangerousness and risk of nonappearance is already baked into Section 1226(c).

*Anthony Javier R.M.*, 2026 WL 1506306, at *4.

From this background, Judge Provinzino observed that because the version of § 1226(c) in effect "when *Demore* and *Banyee* were decided" focused on the mandatory detention of noncitizens "who had been convicted of criminal offenses," and had received procedural protections from the criminal justice system, the due process concerns raised by that subsection's mandatory detention scheme were lessened. *Id.* (quoting *Demore*, 538 U.S. at 513, and citing *Gomez v. Bondi*, No. SA-26-CA-00727-XR, 2026 WL 753307, at *12 (W.D. Tex. Mar. 13, 2026) (noting that "the convictions themselves may stand in for the individualized determination that might otherwise be taken up at a bond hearing, by demonstrating either that the noncitizen is a danger to the community or a flight risk"));

*see Felipe S.P.*, 2026 WL 1911656, at *4 (stating that the criminal convictions identified by Congress in § 1226(c) "were adjudicated with the full procedural protections of the criminal justice system").

In contrast, under § 1225(b)(2), there are no baked-in procedural protections attendant to an underlying criminal proceeding because that provision "requires only a determination that a noncitizen is an 'applicant for admission' who is 'not clearly and beyond a doubt entitled to be admitted.'" *Anthony Javier R.M.*, 2026 WL 1506306, at *5. Moreover, there are no "congressional findings under Section 1225(b)(2) like those discussed in the context of Section 1226(c) suggesting that a noncitizen who . . . has not been convicted of any criminal offense, and who is detained under Section 1225(b)(2) based on his allegedly unlawful presence in the United States, is likely to be a flight risk or a danger to the community." *Id.* (citing *Demore*, 538 U.S. at 518–21; S. Rep. No. 104-48, at 32 (1995) ("Congress should consider requiring that aggravated felons be detained pending deportation. Such a step may be necessary because of the high rate of no-shows for those criminal aliens released on bond.")); *Felipe S.P.*, 2026 WL 1911656, at *5 ("[U]nlike Section 1226(c), Section 1225(b)(2) is not accompanied by evidence-based congressional determinations about the need to detain all noncitizens in deportation proceedings."); *see also Manuel G. v. Blanche*, No. 26-cv-2385 (SRN/ECW), 2026 WL 1256358, at *3–4 (D. Minn. May 7, 2026) (distinguishing *Banyee* and *Demore* and finding they do not foreclose a due process challenge to mandatory detention under § 1225(b)(2)).

Both *Demore* and *Banyee* addressed the due process concerns presented by mandatory detention for a class of criminal noncitizens who have already received

significant process through the criminal justice system and for whom the risks caused by their release were already the subject of congressional findings. The rationale underlying the conclusions in those cases that the Due Process Clause requires no individualized determination for such detainees does not map onto the entire class of noncriminal applicants for admission who are now subject to mandatory detention under § 1225(b)(2) in the Eighth Circuit.

*Demore* and *Banyee* do not control the due process claim at issue for a second reason as well. Both cases considered whether the due process clause placed a limit on how long a noncitizen could be detained pursuant to § 1226(c). The court in *Banyee* described the question before it as "whether the year-long detention violated [petitioner's] rights . . . ." 115 F.4th at 931. Emphasizing the necessarily finite nature of § 1226(c) detention pending removal proceedings, the court found that Banyee's prolonged detention did not do so. *Id.* at 931–33. The court expressly rejected a multi-factor test which had been applied by the district court to determine when detention had become unconstitutionally long. *Id.* at 933 (finding "no room for a multi-factor 'reasonableness' test").

The *Demore* Court was likewise tasked with assessment of whether detention pending removal of "criminal aliens" violated due process and specifically noted that the average length of such detention was 47 days.[5] 538 U.S. at 529. The Court noted that this was shorter than the length of time presumptively allowed to effectuate removal in

[5] In its briefing to the Supreme Court in *Jennings v. Rodriguez*, 583 U.S. 281 (2019), the government later confirmed that "the statistics it gave to the Court in *Demore* were wrong," and "[d]etention normally lasts twice as long as the Government then said it did." *Id.* at 343 (Breyer, J., dissenting). The Court suspects those delays are even longer today.

*Zadvydas v. Davis*, 533 U.S. 678 (2001). *Id.* at 528–29. Perhaps because Congress had already balanced the risk of flight and community danger risks presented by the "criminal alien" habeas petitioners in *Banyee* and *Demore*, the question in those cases focused on whether detention during removal proceedings could violate due process because of its duration; in contrast to this case, the central question was not whether the detentions violated the due process clause at their inception.

For these reasons, the Court concludes that Petitioner's due process claim is not precluded by *Banyee* or *Demore*.

***Thuraissigiam***

Similarly, the Court concludes that *Thuraissigiam* does not undermine Hector's due process claim. This is so because: (1) the petitioner in *Thuraissigiam* did not challenge the legality of his detention, but instead sought judicial review of the government's determination that he was ineligible for asylum; and (2) "*Thuraissigiam*'s holding, by its own language, is limited to noncitizens at the border—that is, those who are 'seeking initial entry.'" *Anthony Javier R.M.*, 2026 WL 1506306, at *6 (quoting *Thuraissigiam*, 591 U.S. at 139–40). By contrast, Hector is not challenging his removability; instead, he raises a core habeas challenge, arguing only that his current detention is unlawful because he has not been given due process protection related to that detention. *Id.* (distinguishing *Thuraissigiam* because Anthony Javier R.M. "directly challenge[d] the lawfulness of his detention without a bond hearing"). In addition, Hector has been in the United States for

several years, during which time he has developed ties to the community.[6] *Id.* (observing that the "circumstances of Anthony Javier R.M.'s presence in the United States" entitled him to greater protections than one who has never established connections with this country and that "*Thuraissigiam* itself suggests that this distinction is material"); *see also Felipe S.P.*, 2026 WL 1911656, at *6 (finding *Thuraissigiam* "inapplicable" for the same reasons). For these reasons, *Thuraissigiam* does not foreclose Petitioner's due process claim.

Ultimately, the Court concludes that none of the cases on which Respondents rely preclude Petitioner's claim that he is due greater process than he has received before he can continue to be detained.

### C. The *Mathews* Balancing Test

To resolve Petitioner's due process claim, the Court applies the test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Anthony Javier R.M.*, 2026 WL 1506306, at *8–10 (applying *Mathews* to a similar claim); *Felipe S.P.*, 2026 WL 1911656, at *7–10 (same). Before doing so, however, the Court will address Respondents' threshold contention that the *Mathews* framework is inapplicable in this context.

Respondents argue that the *Mathews* test should not be applied in a habeas case in which an individual, like Hector, argues that his own detention is unlawful. Resp. to Pet. at 21–24, Dkt. 5. The Court is not persuaded. As Judge Brasel explained in *Felipe S.P.*, "[b]ecause the fundamental interest at issue here—freedom from bodily restraint—is

[6] *See, e.g.*, Pet. ¶¶ 12 (indicating that Hector has lived in Minnesota since May 2023, applied for asylum, obtained a work permit, has steady employment and housing, lives with his mother and family members, and provides care and support for his mother and younger brother).

expressed in the Due Process Clause, government detention violates the Clause except in certain special and narrow nonpunitive circumstances." 2026 WL 1911656, at *2 (quoting *Zadvydas*, 533 U.S. at 690) (cleaned up). Moreover, the Supreme Court has repeatedly made clear that the protections of the Due Process Clause apply to persons here illegally: "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (collecting cases). Respondents' position that aliens without permission to be in the United States do not have any liberty interest beyond that afforded to them by statute runs afoul of this jurisprudence.[7] So, the undersigned joins the "federal courts around the country apply[ing *Mathews*] when analyzing what process the government owes noncitizens detained during removal proceedings, including those detained under Section 1225(b)(2)." *Felipe S.P.*, 2026 WL 1911656, at *7; *see also id.* at *7 n.4 (collecting cases).

Turning to application of *Mathews* itself, the test requires balancing three considerations: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative

[7] The government does not suggest another test or analytical framework for considering Hector's due process argument but instead challenges whether he has a due-process based right to liberty at all. The Court concedes that the *Mathews* test arose from a distinct context and may not be a perfect fit here. But that does not lead to the conclusion that Hector has no remedy: his claim arises from the Constitution itself.

burdens that the additional or substitute procedural requirement would entail. 424 U.S. at 335.

First, as already explored above, the Court finds that continued detention of Petitioner implicates a serious liberty interest. *Anthony Javier R.M.*, 2026 WL 1506306, at *8 (explaining that the petitioner's "'interest in being free from physical detention' by the Government 'is the most elemental of liberty interest'") (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). In light of Petitioner's continued detention in the Sherburne County jail, the Court finds that the first factor weighs in Hector's favor. *Anthony Javier R.M.*, 2026 WL 1506306, at *8 (finding the first *Mathews* factor weighed in the petitioner's favor).

Next is the risk of erroneous deprivation of this liberty interest. In the detention context, "due process requires that the conditions and duration of confinement . . . bear some reasonable relation to the purpose for which persons are committed." *Seling v. Young*, 531 U.S. 250, 265 (2001). As discussed above, the interests at issue here are: (1) ensuring that the noncitizen will appear for immigration proceedings; and (2) preventing danger to the community. *See Jennings*, 583 U.S. at 286 ("Detention during [immigration] proceedings gives immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity before a final decision can be made."). Here, it is evident that there is no way of determining whether either of these two goals are advanced by Hector's detention without an individualized assessment of his case. The simple fact that, as interpreted by *Avila*, Hector is subject to mandatory detention under 8 U.S.C. § 1225(b)(2), isn't enough. To date Respondents have

not given Hector any individualized review with respect to the need for his detention, and he has not received a hearing to contest whether his detention is necessary.

Ultimately, this Court agrees with others that have found there is a high risk of erroneous deprivation of liberty in this context without an individualized bond hearing to assess whether Petitioner's detention is necessary to ensure his appearance for immigration proceedings and prevent danger to the community. *Anthony Javier R.M.*, 2026 WL 1506306, at *9; *Felipe S.P.*, 2026 WL 1911656, at *8–9; *David J.C.P. v. Blanche*, No. 26-cv-2181 (DWF/ECW), 2026 WL 1102725, at *3 (D. Minn. Apr. 23, 2026); *Manuel G.*, 2026 WL 1256358, at *4–5; *Mejia-Briones v. Warden*, No. 1:26-CV-1109-RP, 2026 WL 1245750, at *3 (W.D. Tex. May 5, 2026) ("The second factor—the risk of erroneous deprivation—also weighs strongly in favor of Petitioner. Petitioner lacks any opportunity to contest the reasonableness of his detention, meaning the risk of erroneous deprivation lies in this 'automatic continued deprivation of liberty for a noncitizen.'").

Finally, the third *Mathews* factor concerns the government's interest, including the administrative burdens that additional procedures would impose. Respondents assert that government has an interest in uniformly administering the nation's immigration laws and preserving the detention framework that Congress established under § 1225(b)(2), and in doing so efficiently. Resp. to Pet. at 23–24.

The Court acknowledges that these are important government interests. The Court also does not overlook that concluding the Due Process Clause requires Respondents to hold a bond hearing in this context could increase the government's burden. But until the Eighth Circuit's recent decision in *Avila*, the government routinely provided such bond

hearings for detainees like Hector and had done so for decades. And in the Circuits which have reached the opposite decision, they continue to do so. *See, e.g.*, *Barbosa da Cunha v. Freden*, 175 F.4th 61, 72–73 (2d Cir. 2026) (finding that 8 U.S.C. § 1226(a), which includes a provision authorizing release on bond, applied to noncitizens who are present in the U.S., but charged as inadmissible for entering without inspection and admission). There is no suggestion in the record that the burden is unmanageable.

The government's interest in uniformly applying the law is also a valid concern. But again, other Courts of Appeals have reached the opposite conclusion from the Eighth Circuit in *Avila*. *See Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424, at *9 (9th Cir. July 30, 2026) (collecting circuit court decisions that have concluded that § 1225(b)(2)(A) does not apply to unadmitted noncitizens apprehended inside the United States); *Cirrus Rojas v. Olson*, No. 25-3127, 2026 WL 2198315, at *1 n.1 (7th Cir. July 30, 2026) (same). Respondents are, therefore, already required to routinely offer bond hearings to people in identical circumstances to Hector in other districts, and requiring them to do so for him will not significantly change that landscape. Ultimately, the Court is not persuaded that these considerations outweigh Petitioner's substantial liberty interest.

For these reasons, the Court finds that Hector has shown his due process rights are violated by his continued detention without additional procedural protections. The Court further finds: (1) that an individualized bond hearing is required at which an immigration judge assesses whether his release would pose a risk of flight or a danger to the community; (2) Hector is entitled to advance notice of the hearing sufficient to allow his counsel to attend and prepare; and (3) any decision to retain Hector in custody after the bond hearing

must set forth the reasons for his continued detention. If Respondents fail to provide Hector with such a bond hearing within fourteen days, they must release him from detention.

**ORDER**

For the reasons discussed above, **IT IS HEREBY ORDERED THAT**:

1. Petitioner Hector P. M.'s Verified Petition for a Writ of Habeas (Dkt. 1) is **GRANTED IN PART** and **DENIED IN PART**.

   a. The Petition is denied to the extent Petitioner claims he is entitled to an order of immediate release due to an unlawful arrest.

   b. The Petition is granted to the extent that the Court concludes Petitioner's detention under § 1225(b)(2) without an individualized violates his due process rights.

   c. Respondents shall provide Petitioner with a bond hearing at which an individualized assessment is made regarding his risk of flight and whether releasing him will pose a danger to the community. This hearing must take place **within two weeks from the date of this Order**. Respondents must provide Petitioner and his counsel with advanced notice of the hearing promptly after it is scheduled, sufficient to allow his counsel to attend and prepare.

   d. If a bond hearing does not take place within two weeks, or if the Immigration Judge declines to reach the merits of the issue or determines that they lack the authority to do so, the Respondents shall immediately release Petitioner from Custody in Minnesota with his personal effects.

2. Respondents shall file a status report with the Court within 48 hours of the conclusion of the bond hearing or Respondents' decision to release Petitioner from custody detailing the results of the bond hearing or its actions related to release.

**Let Judgment be entered accordingly**.

Date: October 21, 2026

*s/Katherine Menendez*
Katherine Menendez
United States District Judge